IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| CONNIE D. WILLIAMS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | )      4:08-CV-0560-KOB |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
|    Defendant. | |

## MEMORANDUM OPINION

### I. Introduction

The claimant, Connie D. Williams, brings this action seeking judicial review of a final decision of the Commissioner of Social Security who denied her claim for Supplemental Security Income ("SSI"). On October 15, 2003, the claimant protectively filed an application for SSI under Title XVI of the Social Security Act. (R. 45). [1] The claimant alleges disability because of diabetes mellitus, hypertension, arthritis, exogenous obesity, high blood pressure, varicose veins, and chronic and severe pain. (R. 46). The Social Security Administration ("SSA") denied the claimant's application on January 16, 2004, and the claimant made a timely request for a hearing

---

[1] The ALJ reports February 15, 2001 as the claimant's onset date. (R. 19). In the field office disability report, the claimant lists February 1, 2001 as her onset date, and the case manager recommends September 30, 2003 as the claimant's onset date. (R. 80). In her brief, the claimant acknowledges that confusion exists regarding the onset date, but does not resolve the confusion. However, as the Commissioner noted in his brief, a claimant asserting SSI claims becomes disabled in the first month where she is both disabled and has an SSI application on file. 20 C.F.R §§ 416.202(g), 416.203(a), 416.501; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Because claimant filed her SSI application in October of 2003, she cannot claim an onset date of disability before October of 2003.

before the Administrative Law Judge ("ALJ") in February of 2004. (R. 98). The ALJ conducted the hearing on May 3, 2005, and issued an unfavorable decision on July 5, 2005, denying benefits. (R. 27, 38). On January 14, 2008, the claimant appealed to the SSA Appeals Council from the ALJ's denial of benefits. (R. 6). On February 1, 2008, the Appeals Council denied the claimant's request for review. (R. 3-5). This denial rendered the ALJ's opinion the final decision of the Commissioner. Thus, this case is now ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. Issue Presented

The claimant presents the following issue for review: whether the ALJ erred in failing to properly credit the opinion of the claimant's long-term treating physician.[2]

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The court does not review the Commissioner's factual determinations *de novo*, but the court will affirm those factual determinations that are supported by substantial evidence.

---

[2] The claimant also raised the issue of whether the ALJ improperly attacked the claimant's credibility based on factors contrary to the medical evidence, but the court need not address this issue because the court is remanding based on the first issue.

"Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ relied.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when he or she cannot engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period if not less than twelve months. To make this determination, the

> Commissioner employs a five-step, sequential evaluation process:
>
> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal on of the specific
>     impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the
>     economy?
>
> An affirmative answer to any of the above questions leads either to
> the next question, or, on steps three and five, to a finding of
> disability. A negative answer to any question, other than step three,
> leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

The ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). However, the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Eleventh Circuit has found "good cause" existed where the treating physician's opinion was not bolstered by the evidence or where the evidence supported a contrary finding. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987). The Eleventh Circuit has also found "good cause" where the treating physician's opinions were wholly conclusory or inconsistent with the treating physician's own medical records. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Crawford v. Comm'r*, 363 F.3d 1155, 1160 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

## V. Facts

The claimant was forty-seven years old at the time of the hearing and has a tenth grade education. (R. 181). Her past work experience includes employment as a manager of a liquor establishment, a dishwasher at a restaurant, and a dispatcher for a cab company. (R. 84). The claimant has not engaged in substantial gainful activity since July 1999, when she left her job of fifteen years as a bar manager. *Id*. The claimant applied for SSI on October 15, 2003, alleging

that she became unable to work because of diabetes mellitus, hypertension, arthritis, exogenous obesity, high blood pressure, and "bad veins." (R. 46, 80).

The claimant visited Central Health Care doctor Celia Lloyd-Turney, M.D., her long-term treating physician on February 19, 2002; March 4, 2002; April 2, 2002; and March 7, 2003 (R. 109-113). On February 19, 2002, Dr. Lloyd-Turney diagnosed the claimant with diabetes mellitus and hypertension. (R. 113). On that date, the claimant weighed 292 pounds and her blood pressure was 166/100. *Id*. On March 4, 2002, Dr. Lloyd-Turney reported in the claimant's progress note that the claimant's medication did not help with her back and leg pain and diagnosed the claimant with diabetes mellitus and high blood pressure. (R. 112). On that date, the claimant's blood pressure was 140/86 and she weighed 281 pounds. *Id*. On April 2, 2002, Dr. Lloyd-Turney assessed the claimant with diabetes mellitus and high blood pressure and observed that the claimant was suffering from painful sinus pressure as well as sinus drainage and congestion. (R. 111). On that date, the claimant's blood pressure was 136/84. *Id*. On March 7, 2003, Dr. Lloyd-Turney reported that the claimant had diabetes mellitus and high blood pressure. (R. 109). On the date of that visit, the claimant weighed more than 300 pounds and her blood pressure was 160/100. *Id*.

On September 30, 2003, the claimant, unable to pay for treatment from Central Health Care, visited the Community Free Clinic where her medication was adjusted and she was told to return in two months. (R. 155). On that date, her weight was 294 pounds and her blood pressure was 165/85. *Id*. The claimant returned to the Community Free Clinic on November 25, 2003, for a blood pressure and blood glucose check, at which time she was instructed to keep a diary recording both her blood pressure readings and her blood glucose levels. (R. 151).

On December 22, 2003, John Lary, M.D., department consultative examiner, gave the claimant a consultative evaluation ("CE") ordered by the State Disability Determination Services ("DDS"). (R. 124). The CE was scheduled because "the evidence, previously obtained, both medical and nonmedical, [was] not sufficient to support a determination." (R. 66). The claimant's treating source did not perform the CE because the treating source did not indicate "a willingness to perform such an examination." *Id*. At the time of the CE, the claimant complained of hypertension, diabetes, varicose veins, a stomach problem, and numbness of the toes. (R. 124). Dr. Lary diagnosed the claimant with "diabetes mellitus, diabetic sensory peripheral neuropathy, hypertension, morbid obesity, knee arthritis symptoms, mild to moderate varicose veins of the right leg without ulcer, [and] refractive error." (R. 127). He concluded that the claimant's varicose veins mildly impaired her ability to sit. *Id*. He additionally noted that the claimant's varicose veins and morbid obesity *may* impair her ability to stand, walk, lift, carry, bend and squat. *Id*. He also reported that the claimant needed glasses; her grip was good; her joints were normal; she could walk normally; she could dress, bathe, and feed herself; and she could "assume and arise from a semi-squat position." (R. 124-26). Dr. Lary noted that the claimant's varicose veins were worse in her right leg. (R. 125). He also recorded her blood pressure as 180/106 and her weight as 286 pounds. *Id*. Dr. Lary based his medical report, diagnoses, and conclusions upon his review of the medical evidence of records that the DDS provided to him, the claimant's oral and written report of her medical history, and his own observations about and physical examination of the claimant. (R. 124).

In conjunction with the December 22, 2003 CE examination, the claimant completed a Systems Review and a Self-Assessment Health Survey. (R. 123, 133). In the Systems Review,

she reported frequent headaches, ear infections, sinus problems, heartburns, occasional pain in her arms and hands, pain in her knee, pain in her legs and feet at night, and the occasional sore throat. (R. 123).  The claimant reported that she could not squat. (R. 129).   She also reported that she had difficulty walking for long periods of time, using stairs, standing for long periods of time, carrying, lifting, bending, seeing, reading, and traveling.  *Id*. She further reported that she could not climb.  *Id*.  In the Self-Assessment Health Survey, the claimant reported that her health was poor and "somewhat worse now than one year ago." (R. 133).  She also reported that her health limited her in vigorous activities "a lot" and in moderate activities "a little." (R. 133). She further reported that her health limited her ability to lift or carry groceries, climb stairs, bend, kneel, stoop, walk more than one mile, and walk one block.  *Id*.  The claimant additionally claimed that pain interfered with her normal work "quite a bit" and also interfered with her normal social activities "quite a bit." (R. 134).

On January 7, 2004, disability specialist Henrietta Harris-Lee completed the Vocational Rationale Form.  (R. 61).  In her report, Harris-Lee opined that the claimant was a younger individual with limited education. *Id*.  She also opined that the claimant's "limitations outlined in the RFC were consistent with the physical/mental requirements of the claimant's past relevant work as a bartender." *Id*.  Lee reported that the consultative examination was performed because "the evidence, previously obtained, both medical and nonmedical, is not sufficient to support a determination." (R. 66).

On January 13, 2004, R. D. Carter, M.D., a non-examining, non-treating state agency medical consultant, found that the claimant could occasionally lift or carry fifty pounds, frequently carry twenty-five pounds, stand or walk with normal breaks for a total of about six

hours in an eight-hour work day, and sit with normal breaks for a total of six hours in an eight-hour work day. (R. 24, 140). Dr. Carter additionally found that the claimant was unlimited in her ability to push and pull with her hands and feet, was able to walk normally, "assume and arise from a semi-squat position," balance without any aids, and frequently stoop, kneel, crouch, climb stairs, and crawl. (R. 140-41). Dr. Carter also noted that the claimant could never climb ladders, ropes, or scaffolds. *Id*. According to Dr. Carter, the claimant should avoid all exposure to hazardous machinery and unprotected heights and should avoid concentrated exposure to extreme heat and cold. (R. 143). Finally, Dr. Carter concluded that "the severity or duration of the symptoms . . . [was] disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairments." (R. 144). Dr. Carter found that the claimant was "only partially credible concerning some of her alleged symptoms and functional limitations," and stated that he gave the CE opinion of Dr. Lary "little weight." (R. 144-45).

     On February 3, 2004, the claimant returned to the Community Free Clinic for medication renewal, complaining of joint pain, and leg cramps. (R. 171). On that date she weighed 290 pounds and her blood pressure was 150/88. *Id*. On February 24, 2004, a Community Free Clinic doctor reported that the claimant weighed 294 pounds and had a blood pressure of 165/95. (R. 149). The claimant's chief complaints on February 24th, 2004, were "stinging" pain in her right leg and inner ear pain. *Id*. On August 19, 2004, the claimant returned to the Community Free Clinic, where she was diagnosed with hypertension, diabetes mellitus, gastroesophageal reflux disease, and biceps tendinitis. (R. 148). On August 19, 2004, the claimant weighed 285 pounds and her blood pressure was 135/ 90. *Id*. On January 13, 2005, the claimant returned to the Community Free Clinic to get medications. (R. 147). On the date of that visit, the claimant

weighed 309 pounds and her blood pressure was 170/95. *Id*. The doctor ordered the claimant to take a home pregnancy test and visit a diabetic eye clinic. *Id*.

On April 2, 2004, Dr. Lloyd-Turney completed a Clinical Assessment of Pain, in which she reported that "pain is present to such an extent as to be distracting to adequate performance of [the claimant's] daily activities or work." (R. 122-23). She also found that physical activity would greatly increase the level of pain the claimant would experience "to such a degree as to cause distraction form [sic] task or total abandonment of task." (R. 122). Dr. Lloyd-Turney further reported that pain was "present to such an extent as to be distracting to adequate performance of her daily activities or work;" physical activity would greatly increase pain to "such a degree as to cause distraction from [sic] task or total abandonment of task; and "pain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (R. 122-23).

On April 5, 2004, Dr. Lloyd-Turney examined the claimant and completed a medical assessment of the claimant's ability to engage in physical work-related activities. (R. 120-21). She noted the claimant had diarrhea caused by some of her medications. (R. 120). Dr. Lloyd-Turney diagnosed the claimant with high blood pressure, acute sinusitis, diabetes mellitus, and arthritis. (R. 164). In her assessment, Dr. Lloyd-Turney reported that the claimant's ability to stand and walk was impaired by leg pain such that the claimant could stand or walk for four hours in an eight-hour work day and could stand or walk for between half an hour and one hour without interruption. (R. 120). In her assessment, Dr. Lloyd-Turney also reported that the claimant could sit for eight total hours in an eight-hour work day, but the leg pain prevented her from sitting for more than two and three hours without interruption. *Id*. Dr. Lloyd-Turney

reported that the claimant could never climb, stoop, kneel, balance, crouch, or crawl; that the claimant's ability to reach, handle, feel, push, and pull were affected by her impairment; and that the impairment caused environmental restrictions such as avoiding heights, moving machinery, temperature extremes, and chemicals. (R. 121). Further, Dr. Lloyd-Turney reported that the claimant could lift or carry no more than ten pounds for no longer than one-third of an eight-hour work day. (R. 120).

Dr. Lloyd-Turney examined the claimant again on April 23, 2004; June 7, 2004; July 6, 2004; July 27, 2004; and September 3, 2004. (R. 159-163). On June 7, 2004, the claimant alleged that her left shoulder was hurting, and requested a foot exam. (R. 162). On July 27, 2004, the claimant complained of pain in her right shoulder. (R. 160). On that date she weighed 302.6 pounds and her blood pressure was 156/90. *Id*. On September 3, 2004, the claimant returned to Dr. Lloyd-Turney at Central Health Care complaining of cramps in both legs that were worse at night. (R. 159). On January 13, 2005, the claimant returned to the Community Free Clinic where she was instructed to follow a 1500 calorie diet. On the date of that visit, she weighed 309 pounds and her blood pressure was 170/95. (R. 158). On February 17, 2005, the claimant returned to Dr. Lloyd-Turney. (R. 159). At that time, she weighed 306 pounds, her blood pressure was 140/86, and Dr. Lloyd-Turney instructed her to follow a 1500 calorie diet. *Id*.

The SSA denied the claimant's application for SSI on January 16, 2004, and on February 11, 2004 the claimant made a timely request for a hearing before the ALJ. (R. 98). In her request for an ALJ hearing, the claimant reported that she could "hardly walk," her legs got numb, and she couldn't feel her toes. *Id*. She also reported that she had difficulty going to the

grocery store, that her pain increased since last completing a disability report, and that she was afraid she would fall while in the tub. (R. 102). The hearing was conducted in Decatur, Alabama on May 3, 2005. (R. 38).

At the hearing, the claimant testified that since February 2001, diabetes and circulatory problems related to varicose veins had caused numbness and a burning sensation in her feet three or four times a month, cramps in her toes causing her toes to turn backwards when she lies down at night, swelling of her ankles and feet, bruising, and pain in her legs. (R.185). She further testified that arthritis had caused swelling and pain in her knees since 2001, and she had pain in her ankles that required her to elevate her feet four to five hours per day. (R. 186-87). The claimant also gave testimony that arthritis began to cause pain in her hands in 2002, and in her left shoulder in 2004. (R. 183). She claimed that the pain in her hands was aggravated by the rain and sometimes prevented her from opening jars. *Id*. She also claimed that she was unable to walk one block without taking a break to ease the pain in her lower back, and that she is unable to sit for a long period of time because of pain in her left hip. (R. 187). The claimant further testified that since 2000, she had suffered from incontinence, which caused her to have accidents. (R. 190). She also testified that she experienced constant headaches, an hour of dizziness per day caused by problems with balance, and sickness in her stomach caused by diabetes. (R. 191). The claimant testified that she was no longer able to read because a "busted blood vessel behind her eye" blurred her vision. (R. 194). The claimant also testified that she was able to do household chores for "a little bit;" drive approximately once a week; use the microwave; engage in sexual intercourse; and dress, bathe, and feed herself without any assistive devices. (R. 124, 194-95).

The ALJ found that the medical evidence indicated that "the claimant had diabetes

mellitus with early neuropathy and retinopathy, hypertension varicose veins, and exogenous obesity." (R. 19). The ALJ stated that these impairments were severe, but not severe enough to meet one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. *Id*. The ALJ opined that the claimant's problems were not severe enough to meet the criteria of "any Section following Section 1.01, Musculoskeletal Impairments; any Section following Section 4.00, Cardiovascular System; or any Section following Section 9.00, Endocrine System." *Id*. Noting the claimant's ability to control her diabetes and hypertension, the ALJ stated that the primary cause of the claimant's symptoms and limitations was noncompliance. (R. 24).

The ALJ next assessed whether the claimant retained the residual functioning capacity to perform the requirements of her past relevant work. (R. 20). The ALJ determined that "there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, numbness and other symptoms which the claimant alleges have precluded her from working." *Id*. The ALJ stated that he accorded little weight to the reports of Dr. Lary, Dr. Lloyd-Turney, and the Community Free Clinic doctors, and listed one reason for doing so: the limitations consistent with sedentary work-related activities reported by Dr. Lloyd-Turney were inconsistent "with her findings in the medical evidence [and] with those of any other treating or examining physician." (R. 24). Although Dr. Carter was neither a treating nor an examining physician, the ALJ adopted "Dr. Carter's opinion in assessing the claimant's residual functional capacity." *Id*. The ALJ found that the limitations noted by Dr. Carter were "reasonable and consistent with the evidence as a whole, including the medical evidence and the claimant's testimony regarding her activities of daily living." *Id*.

Based on the opinion of Dr. Carter, the medical evidence as a whole, and "the claimant's

testimony regarding her activities of daily living," the ALJ stated that the claimant "can either stand and walk or sit for six hours in an eight-hour workday." (R. 25).  The ALJ found that "she should not work at unprotected heights or near moving machinery," nor should she "climb ladders, ropes or scaffolds." *Id*.  The ALJ additionally opined that "the claimant's complaints of pain, numbness, and other symptoms are neither credible nor consistent with either the medical evidence or her testimony regarding her activities." *Id*.

The vocational expert who testified at the hearing characterized the claimant's past relevant work as a bar manager as "light in exertional requirements as usually performed in the national economy, medium exertionally as she performed it, and skilled in nature." *Id*.  The vocational expert stated that the claimant "retains the ability to perform her past relevant work as a bar manager as it is usually performed in the national economy and described in the Dictionary of Occupational Titles under #187.167-126." (R. 26).  The vocational expert further noted that the claimant also retained the ability to "perform sedentary unskilled jobs such as folder, DOT #685.687-014; table worker, DOT #739.687-182; and final assembler, DOT #713.687-018." *Id*.  Based on the vocational expert's testimony, the ALJ concluded that the claimant "retains the ability to perform her past relevant work" as a bar manager and has not been "'under a disability' at any time through the date of this decision." *Id*.

On January 14, 2008, the claimant appealed to the SSA Appeals Council from the ALJ's denial of benefits. (R. 6).  On February 1, 2008, the Appeals Council denied the claimant's request for review. (R. 3-5).  This denial rendered the ALJ's opinion the Commissioner's final decision.

## VI. Discussion

The claimant alleges that the ALJ erred in failing to properly credit opinion evidence from plaintiff's long-term treating physician, Dr. Lloyd-Turney. The Eleventh Circuit has found that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless "good cause" exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). Absent a showing of good cause to the contrary, the ALJ cannot disregard the long-term treating physician's opinions, and an ALJ's failure to give considerable weight to the treating physician's opinion is a reversible error. *Id* at 961; *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The law in this circuit recognizes the existence of good cause where the opinion of the treating physician is not accompanied by objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment notes; and where the "treating physician's opinion was not bolstered by the evidence." *Edwards v. Sullivan*, 937 F.2d 580, 583 (1991). Good cause also exists where the "evidence supported a contrary finding from that of the treating source." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (2004).

However, where medical evidence does not conclusively contradict the treating physician's opinion and no other good cause is presented, the ALJ cannot disregard the long-term treating physician's opinion. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1986). Further, "[t]he opinion of a non-examining physician does not constitute the good cause needed to reject a treating physician's opinion," and "[t]he reports of reviewing non-examining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb*, 847 F.2d at

703; *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).  In discounting the opinion of the treating physician, the ALJ must "clearly articulate" his reasons for doing so.  *Phillips*, 357 F.3d at 1241.  The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

       Dr. Lloyd-Turney treated the claimant regularly from February 2002 through February 2005.  In determining that the claimant was not disabled, the ALJ disregarded the opinion of Dr. Lloyd-Turney, and listed one reason for doing so: the limitations regarding sedentary work-related activities Dr. Lloyd-Turney noted were inconsistent with the evidence.  (R. 24).  Here, the ALJ reached a conclusion–that Dr. Lloyd-Turney's findings were inconsistent with the other evidence–but failed to clearly articulate *why* he thought the sedentary limitations and reports of chronic lower extremity pain Dr. Lloyd-Turney noted were inconsistent with the opinions of other physicians, and inconsistent with her own findings in the medical evidence.  *Id*.

       For example, the ALJ cites that Dr. Lloyd-Turney's treatment notes state that the claimant could "sit up to eight hours, two to three hours at a time."  *Id*.  The ALJ likewise cites that Dr. Lary's treatment notes state that "the claimant's ability to sit was considered mildly impaired by varicose veins" and morbid obesity, and that "the claimant could sit up to eight hours, two to three hours at a time."  *Id*.  Contrary to the ALJ's conclusions, these findings by two separate physicians coincide.  Additionally, Dr. Lloyd-Turney's records regarding lower extremity and back pain, diabetes mellitus, refractive error, varicose veins, arthritis, hypertension, and high blood pressure are consistent with the diagnoses of Dr. Lary and the records from the Community Free Clinic, all of which reflect the claimant's diagnoses of diabetes mellitus, hypertension, and

refractive error. (R. 109-19, 127, 147-56, 157-65). Like Dr. Lloyd-Turney, Dr. Lary found that the claimant's impairments, including obesity and varicose veins, limited her ability to sit and stand. (R. 127).

The ALJ erred in stating that the limitations Dr. Lloyd-Turney noted were inconsistent with the opinions of Dr. Lary and the Community Free Clinic doctors. The ALJ cited no evidence of record that was inconsistent with Dr. Lloyd-Turney's opinion *except for* the opinion of Dr. Carter, who was neither a treating nor examining physician. *Id*. Furthermore, the ALJ disregarded Dr. Lloyd-Turney's estimation of the claimant's degree of pain[3] as reported in the Clinical Assessment of Pain. In the Clinical Assessment of Pain, Dr. Lloyd-Turney reported that the claimant's pain was "present to such an extent as to be distracting to adequate performance of her daily activities or work;" physical activity would greatly increase pain to "such a degree as to cause distraction form [sic] task or total abandonment of task; and "pain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (R. 122-23). These limitations that Dr. Lloyd-Turney noted are not *inconsistent* with Dr. Lary's opinion or the Community Free Clinic doctors' opinions; rather, these limitations provide additional information regarding the claimant's subjective complaints of pain. Because the opinion of the long-term treating physician does not *conclusively contradict* the medical evidence, the ALJ cannot disregard the opinion of Dr. Lloyd-Turney.

The ALJ apparently relied heavily on the opinion of Dr. Carter, a reviewing, non-examining physician. The Eleventh Circuit has held that "reports of reviewing, nonexamining

---

[3]The claimant does not raise the issue of whether the ALJ properly applied the pain standard, and the court need not raise that issue sua sponte in its disposition of the case at bar.

physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb*, 847 F.2d at 703. Further, "[t]he opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." *Id*. at 961-962. Therefore, the ALJ should give Dr. Carter's opinion less weight than Dr. Lloyd-Turney's opinion unless he can articulate good cause to favor Dr. Carter's opinion. Because the opinion of a nonexamining physician cannot constitute substantial evidence for the basis of an administrative decision and cannot constitute good cause for rejecting the opinion of the treating physician, the court finds that the opinion of Dr. Carter, the state agency medical consultant, is an insufficient ground on which to deny the claimant benefits. In any event, the court notes that Dr. Carter did not have a complete set of the claimant's records before him at the time of his review because Dr. Carter issued his decision on January 13, 2004, thus failing to consider Dr. Lloyd-Turney's records from the period of April 5, 2004 to February 17, 2005. For all of these reasons, Dr. Carter's opinion does not represent "good cause" for rejecting Dr. Lloyd-Turney's opinion.

  Finally, "[t]he ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). In the instant case, the ALJ stated that "all three opinions are accorded little weight," but failed to state with particularity his reasons for giving little weight to Dr. Lloyd-Turney's opinion, and failed to give *any* reason for giving little weight to the opinions of Dr. Lary and the Community Free Clinic doctors. (R. 24). Instead, the ALJ committed a reversible error by relying solely upon the opinion of Dr. Carter, a nonexamining, nontreating source who issued his decision on January 13, 2004, thus failing to consider Dr. Lloyd-Turney's records from the period of April 5, 2004 to February 17, 2005. Therefore,

substantial evidence does not support the ALJ's decision.

### VII. Conclusion

For the reasons stated, the court REVERSES and REMANDS the Commissioner's decision for further action consistent with this opinion. The court will enter a separate Order consistent with this opinion.

Dated this 13th day of August, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE